UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **MARIE MARTIN**<br>Harrison NY 10528 | : | Case No. |
| | : | Honorable |
| Individually and on behalf of all others<br>similarly situated, | : | **CLASS ACTION COMPLAINT**<br>**(Tag-Along Action)** |
| Plaintiff, | : | |
| | : | **Jury Demand Endorsed Hereon** |
| v. | : | John T. Murray (NY Bar 2216323) |
| **TOYOTA MOTOR CORPORATION**<br>1, Toyota-cho<br>Toyota, Aichi 471-8571 Japan | : | jotm@murrayandmurray.com<br>Direct Dial: (419) 624-3128<br>Margaret M. Murray (Ohio Bar 0066633) |
| | : | mmm@murrayandmurray.com |
| and | : | Direct Dial: (419) 624-3128<br>MURRAY & MURRAY CO., L.P.A. |
| **TOYOTA MOTOR SALES, U.S.A., INC.**<br>19001 South Western Avenue<br>Torrance CA 90501<br>Care of Statutory Agent:<br>CT Corporation System<br>111 Eighth Avenue<br>New York NY 10011 | : | 111 East Shoreline Drive<br>Sandusky OH 44870 |
| | : | Telephone: (419) 624-3000<br>Facsimile: (419) 624-0707 |
| | : | Attorneys for Plaintiff |
| and | : | |
| **TOYOTA MOTOR NORTH AMERICA, INC.**<br>19001 South Western Avenue<br>Torrance CA 90501<br>Care of Statutory Agent:<br>CT Corporation System<br>111 Eighth Avenue<br>New York NY 10011 | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff Marie Martin ("Plaintiff"), by and through her undersigned attorneys, brings this action individually and on behalf of Class Members similarly situated against Defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor North America, Inc. (collectively "Toyota"). Based upon information and belief and upon investigation by her legal counsel, Plaintiff alleges as follows:

## CLASS ACTION

1.     This is a class action seeking damages, restitution, and equitable relief for consumers who have purchased a Toyota, Lexus, or Scion vehicle containing the electronic throttle control system known as the ETCS-Intelligent System (ETCS-i). Vehicles equipped with ETCS-i have a dangerous propensity to suddenly accelerate without driver input and against the intentions of the driver. This increased propensity for runaway acceleration stems in part from the vulnerability of ETCS-i to electronic "confusion" in the ETCS-i sensors and electronics processors. Despite knowledge of such risks, Toyota failed to provide necessary electronic and mechanical fail-safes to enable drivers to bring their vehicles back under control if a runaway event should occur, as many other vehicle manufacturers have done. Plaintiff brings this action on behalf of herself and all others similarly situated.

2.     Plaintiff, Marie Martin, by her undersigned counsel, makes the allegations in this Class Action upon actual knowledge, and as to all other matters upon information and belief and the investigation of her counsel.

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) because at least one class member is of diverse citizenship from

one Defendant, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.

4.    The Court has personal jurisdiction over the Defendants because they conduct substantial business in the State of New York, have sufficient minimum contacts with the State, and otherwise avail themselves of the markets in this State, through promotion, sale, marketing, and distribution of their products and services in this State, so as to render the exercise of jurisdiction by this court permissible under traditional notions of fair play and substantial justice. The State of New York has a substantial and paramount interest in preventing the practices alleged herein from occurring in New York.

5.    Venue is proper in this District under 28 U.S.C. §1391(a) because, among other things, a substantial part of the acts or omissions giving rise to the claims occurred and/or emanated from this District and Defendants have caused harm to class members residing in this District.

6.    Currently an action is pending before Honorable James V. Selna, *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, MDL 2151, in United States District Court for the Central District of California, Case No. 8:10ML02151 JVS(FMOx), which involves questions of fact that are common with those of the Plaintiff herein rendering Plaintiff's claims appropriate for tag-along treatment under Rules 7.4 and 7.5 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation.

## PARTIES

7.    The Plaintiff, Marie Martin, is a resident of Westchester County, New York. In November 2009, Plaintiff Martin purchased a 2010 Toyota Corolla from Toyota City in

3

Westchester County, New York.  In reality, the 2010 Toyota Corolla is unreasonably dangerous as designed and manufactured by Toyota.  Plaintiff did not learn of the vehicle's unique propensity for runaway acceleration, or that Toyota failed to provide adequate fail-safes until after Toyota issued a safety warning regarding the floor mats in certain Toyota vehicles.  As a consequence of Defendants' unlawful and misleading business practices, Plaintiff has suffered harm which includes being deprived of the full use, benefit, and value of her vehicle.  Plaintiff appears in this action on behalf of herself and on behalf of all others similarly situated.

8.     Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation.  TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc.  TMC, through its various entities, designs, manufactures, markets, distributes, and sells Toyota, Lexus, and Scion automobiles in New York and multiple other locations in the United States and worldwide.

9.     Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in California.  TMS is TMC's U.S. sales and marketing arm which oversees sales and other operations in 49 states.  TMS distributes Toyota, Lexus, and Scion vehicles and sells them through its network of dealers.

10.    Defendant Toyota Motor North America, Inc. ("TMNA") is the holding company for, and oversees TMC's manufacturing, financing, sales research and development, and marketing operations in the U.S., Canada, and Mexico and is based in New York.

**PRELIMINARY STATEMENT**

11.    Plaintiff Marie Martin is the owner of a 2010 Toyota Corolla that is equipped with the ETCS-i.  On or about November 14, 2010, Plaintiff was operating her 2010 Toyota Corolla in reverse when it suddenly and unintentionally accelerated in reverse.  Plaintiff had no control over the vehicle and the vehicle only came to a stop when it collided with the base of a tree.  The

acceleration experienced by Plaintiff was neither intended nor controllable.  Plaintiff seeks damages, restitution, and equitable relief for herself and on behalf of Class Members similarly situated, who have purchased or leased a Toyota vehicle containing the electronic throttle control system known as the ETCS-i due to the dangerous propensity for vehicles so equipped to suddenly accelerate without driver input and against the intentions of the driver, coupled with Toyota's failure to provide necessary electronic and/or mechanical fail-safes to enable drivers to bring such vehicles back under control if a runaway event should occur. This increased propensity for runaway acceleration stems in part from the ETCS-i's vulnerability to transient signals, which can cause confusion in the ETCS-i sensors and electronics processors.

12.    Runaway acceleration events almost always begin suddenly and without warning; the throttle opens so rapidly it is wide open before the driver has time to react; the automobile continues out of control despite desperate braking efforts by the driver; and, unless the driver manages to disengage the engine quickly, the likelihood of a catastrophic outcome is great. Consequently, manufacturers must provide an electronic or mechanical failsafe to allow the driver to return the vehicle safely under control when faced with such an emergency.  Toyota has failed to provide such a failsafe.

13.    Reports of unintended accelerations of vehicles began to increase significantly in 2002, when Toyota began installing the ETCS-i in a broad range of its vehicle lines.

14.    ETCS-i-equipped vehicles are sometimes referred to as "throttle-by-wire" or "drive-by-wire" because the ETCS-i has no mechanical linkage between the accelerator pedal and the throttle plate in the engine.

15.    It soon became apparent that models with the ETCS-i were experiencing a failure rate significantly greater than other models.  As the number of reports involving Toyota models

with "throttle-by-wire" electronics grew, the claimed injury and death toll also increased alarmingly.   However, Toyota and Toyota dealers continue to deceptively market ETCS-i-equipped vehicles despite knowledge that such vehicles are unreasonably dangerous by virtue of their design.

16.   By marketing vehicles equipped with ETCS-i such as the 2010 Toyota Corolla without incorporating an electronic or mechanical fail-safe similar to those provided by Toyota's manufacturing competitors, Toyota has dangerously misled Plaintiff and thousands of unsuspecting consumers throughout New York.

17.   Toyota engaged in unfair and deceptive marketing of its ETSC-i-equipped vehicles both in direct communications to its consumers and in misinformation supplied by Toyota to the investigators of the National Highway Traffic Safety Administration ("NHTSA").

18.   When the NHTSA opened an investigation[1] of 2002 and 2003 model year Camry vehicles (all equipped with ETCS-i), the safety agency described the defect alleged by Toyota owners: "Allegations of (A) an engine speed increase without the driver pressing on the accelerator pedal, or (B) the engine speed failing to decrease when the accelerator pedal was no longer being depressed – both circumstances requiring greater than expected brake pedal application force to control or stop the vehicle and where the brake system functioned normally."

19.   At the outset of its investigation, NHTSA asked Toyota to "state the number of each of the following, received by Toyota, or of which Toyota is otherwise aware, which relate to, or may relate to, the alleged defect in the subject vehicles:

      a.   Consumer complaints, including those from fleet operators;

      b.   Field reports, including dealer field reports;

---

[1] Defect Petition DP04-003; Investigation PE-4-021.

    c.      Reports involving a crash, injury, or fatality, based on claims against the manufacturer involving a death or injury; notices received by the manufacturer alleging or proving that a death or injury was caused by a possible defect in a subject vehicle; property damage claims; consumer complaints; and/or field reports;

    d.      Property damage claims;

    e.      Third-party arbitration proceedings where Toyota is or was a party to the arbitration; and

    f.      Lawsuits, both pending and closed, in which Toyota is or was a defendant or co-defendant.

For subparts 'a' through 'd', show each category (e.g., consumer complaints, field reports, etc.) separately. Multiple incidents involving the same vehicle are to be counted/shown separately. Multiple reports of the same incident are also to be counted/shown separately (i.e., a consumer complaint and a field report involving the same incident in which a crash occurred are to be shown as a crash report, a field report and a consumer complaint)."

    20.    Toyota, through TMNA, reported 123 complaints that it said "may relate to the alleged defect"; however, Toyota *intentionally excluded* from its response the following categories of complaints, among others:

"(1) an incident alleging uncontrollable acceleration that occurred for a long duration;[2]

"(2) an incident in which the customer alleged that they could not control a vehicle by applying the brake; and

"(3) an incident alleging unintended acceleration occurred when moving the shift lever to the reverse or the drive position."[3]

---

[2] "Long duration" is defined as lasting longer than one (1) second.
[3] Toyota response to Defect Petition DP04-003.

21.     Toyota, through TMNA, thus *deceptively concealed* an entire universe of potentially relevant customer complaints from NHTSA as well as from the news media and consumer safety groups that monitor NHTSA safety defect investigations.   For example, the report from a driver who had experienced a sudden acceleration which carried him/her for a considerable distance would not be seen by NHTSA because Toyota did not include it in its response, since it occurred for a "long duration".   Similarly, a driver who reported that he/she was standing on the brake and could not overcome the open throttle would have had his/her report excluded from the investigation.

22.     NHTSA's investigation of the alleged defect in 2002 and 2003 Camry vehicles was based largely on information supplied by Toyota, including a cleverly limited group of customer complaints assembled by Toyota coupled with assertions by Toyota that its dealers and manufacturer representatives had "failed to identify a fault within the vehicle".   NHTSA conducted no testing of the integrity of the ETCS-i in terms of its vulnerability to transient electronic interference; nor did NHTSA conduct any tests as to the efficacy of the braking system in an open-throttle condition.   NHTSA closed its investigation, stating that "[a] defect trend has not been identified at this time and further use of agency resources does not appear to be warranted."[4]

23.     Complaints and incident reports from Toyota customers who had experienced sudden, unintended accelerations continued to be reported to NHTSA and to Toyota in substantial numbers even after NHTSA's 2002-2003 Camry initial investigation was closed. Both NHTSA and Toyota issued statements attributing the driver's-side floor mat as the cause despite the fact that floor mats were almost never the cause of any sudden, unintended acceleration events.

---

[4] ODI Resume, PE04-021, Date Closed 07/22/2004.

24.    In 2007, and prompted by the failure rate of Toyota models, NHTSA's Office of Defects Investigation ("ODI") opened an engineering analysis of 2007 Lexus ES-350 vehicles. According to the report, the purpose of the engineering analysis was to:

- Determine whether reported incidents of unintended acceleration were caused by a vehicle system malfunction or mechanical interference;

- Understand and document the effects of unintended acceleration as they impact controllability of the vehicle; and,

- Document potential difficulties experienced by the operator while attempting to regain control of the vehicle.

25.    A section of the NHTSA report entitled "Analysis of the Effects of Unintended Acceleration on Vehicle Control" urgently supports this action under the Consumers Legal Remedies Act. The agency's analysis began as follows:

> The safety consequences of an unsecured rubber floor mat trapping the accelerator pedal with the vehicle in gear can be severe. With the engine throttle plate open, the vacuum power assist of the braking system cannot be replenished and the effectiveness of the brakes is reduced significantly.    During trapped throttle acceleration testing, several methods to defeat acceleration proved effective *but not necessarily intuitive.* (Emphasis supplied.)

26.    The engineering analysis described the first redundancy as follows: "<u>Application of the brake</u> - Significant brake pedal force in excess of 150 pounds was required to stop the vehicle, compared to 30 pounds required when the vehicle is operating normally.   Stopping distances increased from less than 200 feet to more than 1,000 feet. *This required brake pedal force is beyond the physical capabilities of most drivers.*" (Emphasis added.)  This analysis indicates a pressing need for an electronic or mechanical fail-safe.

9

27. On September 29, 2009, following the widespread publicity surrounding the apparent sudden acceleration of a 2009 Lexus ES350 that resulted in a four-fatality crash near San Diego, California, Toyota issued a "Safety Advisory" saying that the company had "taken a closer look" at the potential for the accelerator to get "stuck in the full open position" due solely to interfering floor mats. The advisory stated that the company would soon be recalling certain 2007 - 2010 Camry and Lexus vehicles, 3.8 million in all, to address the issue – the largest recall in Toyota's history and the sixth largest in the United States.

28. Toyota's advisory is dangerously misleading, for the following reasons, among others:

a. By representing that only a trapped floor mat can cause a loss of throttle and braking control, it lures owners of models with no driver's side floor mat into believing there is no possibility of a potentially catastrophic loss of throttle and braking control.

b. The advisory also misleads owners with a driver's-side floor mat into believing that, in the event of a sustained near-wide-open throttle malfunction, the first response should be to visually determine if the floor mat is interfering with the accelerator pedal. This will, in many cases, exacerbate the driver's loss of control as he/she will lose valuable time in shifting to neutral and/or turning off the ignition.

29. Without the remedies provided by New York law, there is a real and imminent danger to the public at large from the subject Toyota models that will continue without the benefit of: (1) a warning to Toyota owners as to the dangers presented by the defects in the system that allow sudden, unintended acceleration; (2) cogent instructions from Toyota to drivers of those vehicles as to the steps to be taken in the event of a sudden, uncontrollable loss of throttle control; (3) the implementation by Toyota of a fail-safe device that would ensure that the system will return the throttle to idle or immediately disengage the engine; and, (4) the

installation by Toyota of an electronic component in each at-risk vehicle that senses the conditions which produce an unintended acceleration and prevents such an occurrence.

30.     The Toyota models at risk ("Class Vehicles") include, but are not limited to, the following:

> Toyota 4Runner from MY 2001 through 2010
> Toyota Avalon from MY 2005 through 2010
> Toyota Camry from Model Year ("MY") 2002 though 2010
> Toyota Camry HV from MY 2007 through 2010
> Toyota Corolla from MY 2005 through 2010
> Toyota FJ Cruiser from MY 2007 through 2010
> Toyota Highlander from MY2004 through 2010
> Toyota Highlander HV from MY 2006 through 2010
> Toyota Land Cruiser from MY 1998 through 2010
> Toyota Matrix from MY 2005 through 2010
> Toyota Prius from MY 2001-2010
> Toyota RAV4 from MY 2004 through 2010
> Toyota Sequoia from MY 2001 through 2010
> Toyota Sienna from MY 2004 through 2010
> Toyota Solara from MY 2002 through 2008
> Toyota Tacoma pickup trucks from MY 2003 through 2010
> Toyota Tundra pickup trucks MY 2000 through 2010
> Toyota Venza from MY 2009 through 2010
> Toyota Yaris from MY 2004 through 2010
> Lexus models from MY 1998 through 2010
> Scion models from MY 2005 through 2010

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

31.     Toyota vehicles containing the ETCS-i system have been purchased throughout the State of New York and are in wide use on New York roads.

32.     Consumers purchasing a Toyota vehicle containing the ETCS-i bargained for a safe, defect-free vehicle. A vehicle defectively designed and/or manufactured has less value than vehicles properly designed and manufactured. The overpayment for a defectively designed and therefore unsafe vehicle constitutes an economic injury.

33.     Consumers purchasing a Toyota vehicle containing the ETCS-i are not informed of the heightened propensity for runaway acceleration in ETCS-i-equipped vehicles. Consumers are also not informed that Toyota does not incorporate an adequate electronic or mechanical fail-safe into its design. Toyota had actual knowledge that ETCS-i-equipped vehicles, as currently designed and manufactured, are unreasonably dangerous to a person who can be expected to rely on them.

34.     ETCS-i-equipped vehicles are unreasonably dangerous due to the following acts and omissions by the defendants:

<ol type="a">
<li>On the part of each Defendant, the failure to properly and adequately design the Class Vehicles and the systems, components, and parts thereof, including, but not limited to, the electronic engine control, the cruise control and other components of the Engine Control Module, collectively denominated by the Toyota entities as the ETCS-i, and the braking system;</li>

<li>On the part of each Defendant, the failure to properly and adequately install a fail-safe software component and/or mechanical safeguard against sudden, unintended acceleration;</li>

<li>On the part of each Defendant, the failure to properly and adequately specify components and component systems for the Class Vehicles that would shield the sensors from transient signals that confuse the ETCS-i and thereby ensure that the vehicle's throttle responded to the intentions and actions of the driver;</li>

<li>On the part of each Defendant, the failure to properly and adequately test the Class Vehicles and the systems, components, and parts thereof, specifically including, but not limited to, the electronic engine control, the cruise control and other components of the Engine Control Module, the ETCS-i and the braking system;</li>

<li>On the part of each Defendant, the failure to properly and adequately perform and/or heed an adequate failure mode and effects analysis (FMEA) or fault tree analysis (FTA) of</li>
</ol>

the Class Vehicles and the systems, components, and parts thereof, specifically including, but not limited to, the ETCS-i, the cruise control and other components of the Engine Control Module, and the braking system;

f.  On the part of each Defendant, the failure to properly and adequately manufacture, fabricate, and assemble the Class Vehicles and the systems, components, and parts thereof, specifically including, but not limited to, the electronic engine control, the cruise control and other components of the ETCS-i, and the braking system;

g.  On the part of each Defendant, the failure to properly and adequately warn of the dangers attendant upon use of the Class Vehicles, specifically including, but not limited to, the extreme risk to the driver and occupants of a loss of control of the throttle and resultant sudden, unintended acceleration of the vehicle, with the attendant risk of severe bodily injury and/or death; and,

h.  Prior to and during the design, manufacturing, marketing and sale of the subject vehicle and thereafter, the Toyota Defendants knew, or in the exercise of reasonable care should have known, that other feasible and safer design alternatives were available to them which would have significantly reduced the risk of sudden, unintended accelerations and the lack of efficacy of the braking system under such conditions. Defendants, and each of them, negligently failed to utilize such other and feasible safer designs in their design of the electronic engine control, the cruise control and other components of the ETCS-i, and the braking system in the Class Vehicles.

## CLASS ALLEGATIONS

34.  Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The Class that Plaintiff seeks to represent is composed of and defined as follows:

All individuals in the United States, who purchased, own or lease a Toyota vehicle manufactured, designed, or sold in the United States with ETCS-i ("Class Vehicles") including, but not limited to:

> Toyota 4Runner from MY 2001 through 2010
> Toyota Avalon from MY 2005 through 2010
> Toyota Camry from Model Year ("MY") 2002 though 2010
> Toyota Camry HV from MY 2007 through 2010
> Toyota Corolla from MY 2005 through 2010
> Toyota FJ Cruiser from MY 2007 through 2010
> Toyota Highlander from MY2004 through 2010
> Toyota Highlander HV from MY 2006 through 2010
> Toyota Land Cruiser from MY 1998 through 2010
> Toyota Matrix from MY 2005 through 2010
> Toyota Prius from MY 2001-2010
> Toyota RAV4 from MY 2004 through 2010
> Toyota Sequoia from MY 2001 through 2010
> Toyota Sienna from MY 2004 through 2010
> Toyota Solara from MY 2002 through 2008
> Toyota Tacoma pickup trucks from MY 2003 through 2010
> Toyota Tundra pickup trucks MY 2000 through 2010
> Toyota Venza from MY 2009 through 2010
> Toyota Yaris from MY 2004 through 2010
> Lexus models from MY 1998 through 2010
> Scion models from MY 2005 through 2010

35.     Excluded from the Class are (a) Toyota Defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with Toyota Defendants, including without limitation, persons who are directors, officers and/or partners of Toyota Defendants and any legal representatives, heirs, successors, and assigns of Toyota Defendants, and (b) any Judge assigned to this action, and her or his immediate family.

36.     Excluded from the Class are any individuals who have suffered a bodily injury or wrongful death as a result of a runaway acceleration event.

37.     The members of the Class are so numerous that joinder of all members would not be feasible or practical. The membership of the entire Class is unknown to Plaintiff at this time; however, it is estimated that the entire Class is greater than 1,000 individuals. The disposition of the claims of the Class Members in a class action will provide substantial benefit to the parties and the court.

38.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse to the interests of other members of the Class.

39.     This dispute raises questions of law and fact that are common to all Class Members, which predominate over questions that arise on an individual basis for Class Members. The common questions of law and fact include, without limitation, the following:

a.      Did Toyota sell, market, advertise, distribute and otherwise place its vehicles utilizing ETCS-i into the stream of commerce throughout New York and the United States;

b.      Whether Toyota had knowledge of the defects prior to its issuance of the current safety recalls;

c.      Whether Toyota concealed defects affecting the Class Vehicles;

d.      Whether Toyota misrepresented the safety of the Class Vehicles;

e.      Did Toyota misrepresent that the Class Vehicles had characteristics or benefits that they do not have;

f.      Whether, by their conduct, Toyota violated the Magnuson-Moss Act, 15 U.S.C. §§2301, et seq.;

g.      Whether Toyota breached its express warranties regarding the safety and quality of its vehicles;

h.      Whether Toyota breached the implied warranty of merchantability because its vehicles were not fit for their ordinary purpose due to their sudden acceleration defect;

g.      Whether, by their conduct, Toyota breached its duty of good faith and fair dealing;

h.      Did Plaintiff and others similarly situated suffer damages;

i.      The extent of damages suffered by Plaintiff and the Class and the appropriate amount of compensation;

j.      Did Toyota act with malice, oppression and fraud so as to justify an award of punitive and exemplary damages; and,

k.      Whether the Plaintiff and the Class entitled to injunctive relief.

40.    Plaintiff, as a representative party, will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in the prosecution of Class action litigation.

41.    The nature of this action and the nature of the laws available to the Class make use of the class action format a particularly efficient and appropriate procedure to afford relief to the class.   Further, this case involves business entity defendants and a large number of individuals possessing claims with common issues of law and fact.   If each individual were required to file an individual lawsuit, the business entity defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual plaintiff with their vastly superior financial and legal resources. Proof of common business practices or factual patterns, which the named Plaintiff experienced, is representative of the Class mentioned herein and will establish the right of  each of the members of the Class to recovery on the claims alleged herein.

42.    The prosecution of separate actions by the individual Class Members, even if possible, would create: (a) a substantial risk of inconvenient or varying verdicts or adjudications with respect to the individual Class Members against Toyota herein; and (b) legal determinations with respect to individual Class Members not parties to the adjudications or which would substantially impair or impede the ability of class members to protect their interests.  Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.   Plaintiff anticipates providing

appropriate notice to be approved by the Court after discovery into the size and nature of the Class.

## FIRST CLAIM FOR RELIEF
### (Magnuson-Moss)

43.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth verbatim herein.

44.     The Class Vehicles are "consumer products" as defined by 15 U.S.C. §2301(1).

45.     Plaintiff is a "consumer" as defined by 15 U.S.C. §2301(3).

46.     Toyota is a "supplier" and a "warrantor" as defined by 15 U.S.C. §2301(4)-(5).

47.     15 U.S.C. §2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

48.     Toyota provided Plaintiff and Class Members with written warranties which are "express warranties" as defined in 15 U.S.C. §2301(6).

49.     The Class Vehicles were sold or leased with "implied warranties" as defined by 15 U.S.C. §2301(7).

50.     Toyota breached both express and implied warranties by not repairing or adjusting the Class Vehicles' materials and workmanship defects; providing the Class Vehicles which were not in merchantable condition, which present an unreasonable risk of sudden unintended acceleration and which were not fit for the ordinary purpose for which the Class Vehicles are used; providing Class Vehicles that were not fully operational, safe, or reliable; and, not curing defects and nonconformities once they were identified.

51.     Plaintiff and the Class Members have had sufficient direct dealings with Toyota and its agents (dealerships) to establish privity of contract. Notwithstanding this, Plaintiff and

the Class Members are intended third-party beneficiaries of contracts between Toyota and its agents and thus they are the intended beneficiaries of Toyota's warranties.

52.    Plaintiff has given Toyota a reasonable opportunity to cure its failure with respect to its warranties and it has failed to do so.

53.    Plaintiff and the Class were damaged by Toyota's breach of its warranties and would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.

54.    Plaintiff and the Class seek to revoke their acceptance of the Class Vehicles, or in the alternative, seek all damages, including diminution in value of their vehicles, in an amount to be proven at trial.

55.    The amount in controversy of Plaintiff's individual claim meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on a basis of all claims to be determined in this lawsuit.

## SECOND CLAIM FOR RELIEF
### (Breach of Express Warranty)

56.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth verbatim herein.

57.    Toyota is and was at all relevant times a merchant with respect to motor vehicles under N.Y. U.C.C. §2-313.

58.    The vehicles sold or leased by Toyota are "things of danger", in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

59.    In the course of selling or leasing its vehicles, Toyota expressly warranted in writing that the Class Vehicles were covered by a Basic Warranty.

18

60.     Toyota breached the express warrant to repair and/or adjust defects in materials and workmanship of any part supplied by Toyota.  Toyota has not repaired or adjusted and has been unable to repair or adjust the Class Vehicles' materials and workmanship defects.

61.     In addition to this Basic Warranty, Toyota expressly warranted several attributes, characteristics, and qualities relating to safety, reliability, and operation.  Generally, these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of ETCS-i.  These warranties were made in advertisements, in Toyota's "e-brochures", and in uniform statements provided by Toyota to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

62.     These additional warranties were also breached because the Class Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessors.  Toyota did not provide at the time of sale or lease, and has not provided since then, vehicles conforming to these express warranties.

63.     Plaintiff has given Toyota a reasonable opportunity to cure its failure with respect to its warranty and Toyota has failed to do so.  As a result of the foregoing, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (Breach of Implied Warranty)

64.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth verbatim herein.

65.     Toyota is and was at all relevant times a merchant with respect to motor vehicles.

66.    The vehicles sold by Toyota are "things of danger", in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

67.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transaction.

68.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  The Class Vehicles are inherently defective in that there are defects that permit sudden unintended acceleration to occur; the Class Vehicles do not have an adequate fail-safe to protect against such sudden unintended acceleration events, nor do they have a brake-override; and the ETCS-i system was not adequately tested.  Toyota was provided notice of these issues.

69.    As a result of the foregoing, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract)

70.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth verbatim herein.

71.    To the extent that Toyota's repair or adjust commitment is deemed not to be a warranty, Plaintiff pleads in the alternative under common law warranty and contract law that Toyota limited the remedies available to Plaintiff and the Class to repairs and adjustments needed to correct defects in materials or workmanship of any parts supplied by Toyota and/or warranted the quality or nature of those services to Plaintiff.

72.     Toyota breached this warranty or contract obligation by failing to repair or replace the Class Vehicles that evidenced a sudden unintended acceleration problem, including those Class Vehicles that were recalled.

73.     As a result of the foregoing, Toyota's breach of warranty or contract has caused Plaintiff and the Class to suffer damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
#### (N.Y. Gen. Bus. Law §349)

74.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth verbatim herein.

75.     New York General Business Law ("G.B.L.") §349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

76.     In the course of Toyota's business, it willfully failed to disclose and actively concealed the dangerous risk of throttle control failure and the lack of adequate fail-safe mechanisms in the Class Vehicles.  Accordingly, Toyota made untrue, deceptive, or misleading representations of material facts to and omitted and/or concealed material facts.

77.     Toyota engaged in deceptive acts or practices when it failed to disclose material information concerning the Class Vehicles which was known to Toyota at the time of sale or lease.  Toyota deliberately withheld information about the Class Vehicles' propensity for sudden, uncontrolled acceleration in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

78.     The propensity of the Class Vehicles for sudden, uncontrolled acceleration and their lack of fail-safe mechanisms were material to Plaintiff and the Class.  Had Plaintiff and the Class known that their Class Vehicles had these serious safety defects, they would not have purchased or leased the vehicles.

21

79.    Because Toyota's deception takes place in the context of automobile safety, that deception affects the public interest.

80.    Toyota's unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on consumers at large.

81.    Plaintiff and the Class suffered injury caused by Toyota's failure to disclose material information.  Plaintiff and the Class overpaid for their vehicles and did not receive the benefit of their bargain.  The value of their Toyota's has diminished now and the Plaintiff and the Class own or lease vehicles that are not safe.

82.    Pursuant to G.B.L. §349, Plaintiff and the Class are entitled to recover the greater of actual damages or $50.  Because Toyota acted willfully or knowingly, Plaintiff and the Class are entitled to recover three times actual damages up to $1,000.

## SIXTH CLAIM FOR RELIEF
### (N.Y. Gen. Bus. Law §350)

83.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth verbatim herein.

84.    New York G.B.L. §350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce ***."  False advertising includes "advertising, including labeling, of a commodity *** if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of *** representations [made] with respect to the commodity ***."  N.Y. G.B.L. §350-a.

85.    Toyota caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known the Toyota, to be untrue and misleading to consumers and Plaintiff.

86.     Toyota has violated §350 because the misrepresentation and omissions regarding the safety and reliability of their vehicles as set forth in the Complaint were material and likely to deceive a reasonable consumer.

87.     Plaintiff and the Class have suffered injury, including the loss of money or property, as a result of Toyota's false advertising.  In purchasing or leasing their vehicles, the Plaintiff and the Class relied on the misrepresentations and/or omissions of Toyota with respect to the safety and reliability of the vehicles.  Toyota's misrepresentations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the drivers' control.  Had the Plaintiff and the Class known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

88.     Plaintiff requests this Court enter such orders or judgments as may be necessary to enjoin Toyota from continuing their unfair, unlawful, and/or deceptive practices.  Plaintiff and the Class are entitled to recover their actual damages or $500, whichever is greater.  Because Toyota acted willfully or knowingly, Plaintiff and the Class are entitled to recover three times actual damages, up to $10,000.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on her own behalf, on behalf of all others similarly situated and on behalf of the general public, prays for judgment against the Toyota Defendants as follows:

A.     For an order certifying this case as a class action and appointing Plaintiff and their counsel to represent the Class;

B.     Awarding damages to Plaintiff and the other Class Members for all causes of action alleged herein;

C.     Awarding restitution and disgorgement as a result of Toyota's unfair business practices;

D.    For an order permanently enjoining Toyota from engaging in the unlawful practices alleged therein;

E.    All equitable remedies available under New York law;

F.    Awarding each Plaintiff its actual damages provided in New York's General Business Law;

G.    Awarding attorneys' fees, expenses and costs;

H.    Punitive damages;

I.    Awarding pre- and post-judgment interest; and,

J.    Providing such other and further relief as this Court may deem just and proper.

Respectfully submitted,

John T. Murray (2216323)
jotm@murrayandmurray.com
Direct Dial: (419) 624-3125
Margaret M. Murray (Ohio Bar 0066633)
mmm@murrayandmurray.com
Direct Dial: (419) 624-3128
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio  44870-2517
Telephone: (419) 624-3000
Facsimile: (419) 624-0707

## JURY DEMAND

Pursuant to Civ. R. 38(B), Plaintiff hereby demands trial by jury on all issues.

Respectfully submitted,

John T. Murray (2216323)
jotm@murrayandmurray.com
Direct Dial: (419) 624-3125
Margaret M. Murray (Ohio Bar 0066633)
mmm@murrayandmurray.com

24

Direct Dial: (419) 624-3128
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio  44870-2517
Telephone: (419) 624-3000
Facsimile: (419) 624-0707